**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| John Kararo, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 24-cv-4299 |
| | ) | |
| Old Dominion Freight Line, Inc., Dee | ) | Trial by Jury Demanded |
| Dee Cox, and currently unknown | ) | |
| managers and supervisors of Defendant | ) | |
| Old Dominion Freight Line, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR RETALIATION AND UNLAWFUL TERMINATION**

Plaintiff, JOHN KARARO, by and through his attorney, James C. Vlahakis, submits the following Complaint for Retaliation and Unlawful Termination against Defendants OLD DOMINION FREIGHT LINE INC., DEEDEE COX, and currently unknown managers and supervisors of Defendant Old Dominion Freight Line, Inc.:

### I. Parties, Jurisdiction and Venue

1.      Plaintiff, JOHN KARARO ("Plaintiff") is a citizen and resident of the State of Illinois.

2.      Defendant OLD DOMINION FREIGHT LINE INC. ("ODFL") is a Virginia corporation and maintains its corporate office in Thomasville, North Carolina.

3.      ODFL's registered agent is CT Corporation System, 208 S. LaSalle St. Suite 814, Chicago IL 60604.

4.      Defendant Dee Dee Cox is ODFL's Vice President of Human Resources.

5.      Plaintiff is a former employee of ODFL who worked at ODFL's Chicago West Service Center.

6.     Plaintiff intends to name currently unknown executives, managers and supervisors of Defendant Old Dominion Freight Line, Inc. who participated in the unlawful conduct described below.

7.     As detailed below, Plaintiff suffered retaliation and was ultimately terminated by ODFL and Defendant Dee Dee Cox because he filed a class action lawsuit against ODFL for violations of the Illinois Biometric Information Privacy Act ("BIPA"), two claims for worker's compensation benefits and because he complained to ODFL, Dee Dee Cox and certain supervisors and managerial employees about certain unlawful acts committed by ODFL, its supervisors and managerial employees and because he complained about being targeted by ODFL as a result of him filing the BIPA class action and his two claims for worker's compensation benefits.

8.     Rather than meaningfully respond to Plaintiff's criticisms, ODFL and Dee Dee Cox chose to terminate Plaintiff.

9.     This Honorable Court has personal jurisdiction over ODFL because it maintains business locations in this judicial district, Plaintiff was employed and worked in this judicial district, and the vast majority of the misconduct at issue took place within this judicial district.

10.     This Honorable Court has subject matter jurisdiction over Plaintiff's claims on the basis of diversity jurisdiction. See, 28 U.S.C. § 1332.

11.     "[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States[.]" 28 U.S.C. § 1332.

12.     Diversity jurisdiction exists because:

a.  Plaintiff is a citizen of the State of Illinois;

b. ODFL is a foreign corporation with its headquarters and principal place of business located outside the State of Illinois;

c. Defendant Cox is a citizen and resident of North Carolina; and

d. Plaintiff seeks in excess of $75,000 as a result of Defendants' unlawful conduct.

13. Venue in this judicial district is proper because ODFL maintains business locations in this judicial district, the complained of conduct took placed within this judicial district, the managers and supervisors that Plaintiff interacted with work in this judicial district, and majority of the material witnesses work for ODFL within this judicial district.

## II. Additional Background Allegations

14. Plaintiff worked for ODFL as a short haul truck driver, where he was paid on an hourly basis.

15. Working as a short haul truck driver involved Plaintiff driving loaded and empty trailers throughout the Chicagoland area.

16. From time to time, ODFL required Plaintiff to work as a long-haul truck driver where he was paid for the miles that he drove, as opposed to being paid on an hourly basis.

17. There are distinct differences between the duties and responsibilities of a short haul truck driver versus a long-haul truck driver.

18. While Plaintiff is well-acquainted with the differences between the duties and responsibilities of a short haul truck driver versus a long-haul truck driver, a times, ODFL and its managerial and supervisory employees failed to inform Plaintiff of certain aspects of long-haul driving – for the purpose of setting Plaintiff up to make a mistake

– that ODFL's managerial and supervisory employees could then exploit for the purpose of writing Plaintiff up for a rule violation.

19.     ODFL and its managerial and supervisory employees *intentionally* failed to inform Plaintiff of certain aspects of long haul driving to provide them with opportunities to attempt to discipline Plaintiff for not following certain unstated rules that ODFL would claim apply to long-haul truck drivers.

20.     ODFL and its managerial and supervisory employees took these actions for the primary purpose of retaliating against Plaintiff and creating grounds for his termination and for the secondary purpose of harassing Plaintiff and causing him to quit as a result of the harassment.

21.     ODFL's President and CEO is Marty Freeman ("Freeman"). See, https://ir.odfl.com/company-information/management-team

22.     ODFL's Executive Vice President and Chief Operating Officer is Gregory B. Plemmons (hereafter "Plemmons"). *Id.*

23.     ODFL's Senior Vice President - Human Resources & Safety is Christopher T. Brooks (hereafter "Brooks"). *Id.*

24.     ODFL's Senior Vice President – Operations is Christopher J. Kelley (hereafter "Kelly"). *Id.*

25.     ODFL's Senior Vice President - Legal Affairs, General Counsel and Secretary, Ross H. Parr (hereafter "Parr"). *Id.*

26.     ODFL's Assistant General Counsel is Peter Murphy (hereafter "Murphy").

27.     At times, Freeman, Plemmons, Brooks, Kelley, Parr and Murphy shall be referred to as ODFL's "Executive Leadership".

### III. Plaintiffs Legal Actions and Protected Activity

#### A. *Plaintiff's BIPA Class Action Lawsuit and Resulting Retaliation*

28.     Plaintiff filed a class action suit against Defendant on April 6, 2023, where the lawsuit asserted that Defendant has violated various provisions of BIPA.

29.     BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

30.     BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

31.     BIPA's express Legislative Findings provide as follows:

> (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

> (d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

> (e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

> (f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

32. The Illinois Supreme Court has recognized that BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019). A private entity's failure to comply with BIPA "is no mere 'technicality'", as the Illinois Supreme Court has explained:

> The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice *before* collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Id.* (emphasis supplied).

33. BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

34. In particular, Plaintiff's Class Action Lawsuit alleged that Defendant failed to obtain his express written permission (as required by BIPA) before it caused Plaintiff to log his time with a biometric based time-clock that utilized Plaintiff's fingerprint.

35.     After Plaintiff filed the BIPA Class Action Lawsuit, he began to face increased scrutiny at work, where various managerial and supervisory employees of ODFL began to write him up for non-existent rule violations.

36.     While Plaintiff did not have a spotless record before he filed the BIPA Class Action, *after* he filed his BIPA Class Action Lawsuit, ODFL, by and through its managerial and supervisory employees, began to target Plaintiff for the purpose of trying to document reasons to justify his termination.

37.     For example, if ODFL and its managerial and supervisory employees declined to write up or warn other drivers for driving one mile an hour over a certain speed limit, ODFL and its managerial and supervisory employees would choose to write up or warn Plaintiff for a rule that it let other employees violate.

38.     Thereafter, ODFL and its managerial and supervisory employees would use the purported rule violations to create a record to justify Plaintiff's eventual termination.

39.     As another example, if an employee logged in a minute early, would often exercise their discretion to *decline* to write up the employee in question.

40.     But if Plaintiff logged in a minute early, ODFL and its managerial and supervisory employees would write Plaintiff up and threaten to terminate him.

41.     The pattern of unlawful retaliation took the form of Plaintiff's supervisors constantly writing Plaintiff up for *alleged* rules infractions – where Plaintiff's supervisors monitored Plaintiff's workplace conduct with a virtual microscope.

### B.  Plaintiff's First Worker's Compensation Injury and Claim

42.     On March 20, 2024, Plaintiff injured his left ankle while at work and filed a claim for workers' compensation benefits shortly after his injury.

43.     ODFL's worker's compensation carrier initially took the position that Plaintiff was faking his injury.

44.     Contrary to ODFL's belief that Plaintiff was faking his injury, a medical examination performed by ODFL's chosen medial provider demonstrates that Plaintiff suffered a workplace injury.

45.     Because Plaintiff filed a claim for workers' compensation benefits close in time to him suing Defendant ODFL for violating BIPA, ODFL accused Plaintiff of faking a workplace injury and fought to deny Plaintiff workers' compensation benefits.

46.     In fact, one of the attorney's assigned to defend ODFL in the BIPA litigation stated that certain members of ODFL's Executive Leadership were upset over having to face BIPA litigation and a worker's compensation claim by the same employee – Plaintiff.

47.     Plaintiff returned to work on or about June 6, 2023.

48.     As detailed in the above Section, while Plaintiff did not have a spotless record before he filed his first claim for worker's compensation benefits, *after* he was well enough to work, ODFL, by and through its managerial and supervisory employees, began to target Plaintiff for the purpose of trying to document reasons to justify his termination.

### C. Plaintiff's Second Worker's Compensation Injury and Claim

49.     On or about January 22, 2024, Plaintiff slipped on ice and injured his back – resulting in him filing a second claim for worker's compensation benefits.

50.     After Plaintiff filed his second claim for worker's compensation Defendant Cox took further actions to terminate Plaintiff.

51.     Plaintiff was terminated by Ms. Cox on January 24, 2024, at the direction of or with the express approval of one or more of the individuals who are part of ODFL's Executive Leadership.

### D. Summary of ODFL's Retaliation and Plaintiff's Eventual Termination

52.     All of these above-described actions were taken to harass Plaintiff for filing the BIPA Class Action Lawsuit, and over time, ODFL and its managerial and supervisory employees amassed purported rule violations in an effort to retaliate against Plaintiff, harass him, force him to quit and ultimately terminate him.

53.     Simply put, ODFL and Plaintiff's managers and supervisors did not subject other employees to this extreme level of scrutiny.

54.     Rather, Plaintiff's supervisors subjected Plaintiff to a higher level of scrutiny because he had filed a BIPA Class Action Lawsuit against Defendant and because Plaintiff had filed two claims for worker's compensation.

55.     In contrast to other employees of ODFL who did not file class action lawsuits and claims for worker's compensation benefits, ODFL - by and through Plaintiffs' supervisors and manager – wrote him up for the following alleged rule violations:

> a. "Overall job performance – not using handheld correctly, 2 unplanned absences, and speeding in the yard";
>
> b. "Not using the handheld correctly, not following supervisor instructions, not checking and securing customer freight, losing a tractor key, failing to communicate with management"[.]

56.     Further, Defendant Cox documented that Plaintiff committed the following alleged rule violations, where Ms. Cox did so in an unlawful effort to terminate Plaintiff.

57.     In particular, Defendant Cox wrote that "[o]n January 17, 2024, John was issued a third final written warning for overall poor job performance and insubordination for continuing to not follow OD procedures as well as supervisor instructions." Defendant Cox went on to write that "[t]he incidents included on that final consisted of" the following alleged infractions:

> Not following supervisor instructions regarding combining meal periods and rest breaks, or taking a rest break and then taking meal period within 5 minutes of returning from the rest break.
>
> Failure to turn in paperwork when returning to the yard, going to another customer, and only turning in the paperwork upon his return, causing potential operational delays.
>
> Losing a tractor key and not being honest with management about doing so. John claims that he turned that key in to Ernesto Sandavol, but Ernesto says that John never returned the lost key.

58.    The alleged incidents did not take place as Ms. Cox claims.

59.    Rather, before Plaintiff was written up (and ultimately terminated for) allegedly losing two work keys (an incident which did not take place), he explained to his supervisor (Ernesto Sandoval) that he had found the missing keys in his laundry – where one of the keys was a backup/copy given to Plaintiff by Sandoval after Plaintiff had truthfully informed Sandoval that he had left his truck key at home.

60.    When Plaintiff told Mr. Sandoval that he had found both keys, Mr. Sandoval told Plaintiff to hold onto the backup/copy that Mr. Sandoval had given to him.

61.    Ahen Plaintiff informed Tammy Gerdes (his facility manager) that he had found both keys, as a further form of retaliation and harassment, Ms. Gerdes (or someone on her behalf) falsely accused Plaintiff of lying.

62.    Thereafter, the following reprimand was issued:

> In December, you said that you left your tractor key at home and you were provided another key. However, on December 22, in an email from, you stated that you actually lost the tractor key – therefore not being honest with management about the company tools and equipment, and also failing to properly safeguard company equipment.

63.    Ms. Gerdes falsely reported that plaintiff lost *both* keys (and lied about the circumstances) in order to try to find a reason to justify terminating Plaintiff.

64.    As noted above in Paragraph 56, Ms. Gerdes' false write-up caused Defendant Cox to justify his termination by claiming that he was not being truthful relative to company property.

65.    Ernesto Sandavol intentionally failed to inform Ms. Cox that Plaintiff only temporarily misplaced his assigned tractor key.

66.    Ernesto Sandavol intentionally misreported his interactions with Plaintiff on December 26, 2023, where Ernesto Sandavol falsely accused Plaintiff of not properly documenting his arrival at one of Defendant's facilities.

67.    This alleged incident resulted from ODFL staff failing to fully train Plaintiff relative to certain procedures – where Plaintiff was not fully trained on purpose – in order to set Plaintiff up for a potential rule violation.

68.    Similarly, Plaintiff was falsely accused of not properly examining a trailer that he drove from one of Defendant's facilities to another facility.

69.    Again, the alleged incident resulted from ODFL staff failing to fully train Plaintiff relative to certain procedures – where Plaintiff was not fully trained on purpose – in order to set Plaintiff up for a potential rule violation.

70.    In furtherance of ODFL's retaliation, Ernesto Sandavol, with the assistance of Anthony Raimondi (another supervisor of Plaintiff), set Plaintiff up for a potential rule violation where Plaintiff was asked to engage in a long-haul assignment to an ODFL facility that Plaintiff did not normally work at.

71.    Further, Ms. Cox falsely accused Plaintiff of falsifying his Department of Transportation Logs and failing to follow work protocols on January 16, 2024, but the alleged infractions were made up and resulted from ODFL's managers and supervisors failing to properly train Plaintiff as to certain complicated work protocols related to certain handheld devices.

72.    The incidents that allegedly took place in December of 2023 and January of 2024 resulted from the fact that Plaintiff was putting pressure on ODFL in terms of certain discovery that was taking place in relation to the BIPA Class Action Lawsuit.

73.    Defendant Cox terminated Plaintiff on January 24, 2024, where she documented the "Termination Reason" as "[f]ailure to follow lawful work assignment, falsification of business records".

74.    Despite claiming that Plaintiff "fail[ed] to follow lawful work assignment" and that he "falsif[ied] …business records", Defendants ODFL and Cox ignored the fact that Plaintiff's managers and supervisors failed to train him in certain aspects of his job functions – where in particular - Plaintiff's managers and supervisors failed to provide Plaintiff with enough training to fully understand the intricacies and requirements of his job when he (from time to time) filled in as a long-haul driver.

75.    Defendants ODFL and Cox, in conjunction with Plaintiffs' managers and supervisors, took advantage of the fact that Plaintiff's managers and supervisors did not fully train him in the intricacies and requirements of Defendant ODFL's long-haul work, and used the fact that Plaintiff was trained in the intricacies and requirements of long-haul work to write him up for bogus rule violations.

76.    By failing to fully train Plaintiff in the intricacies and requirements of Defendant ODFL's long-haul work, Defendants ODFL and Cox, in conjunction with Plaintiffs' managers and supervisors, set Plaintiff up to fail, and in doing so, they retaliated against him and ultimately terminated him.

77.    But before Plaintiff was terminated, he attended a meeting with other short haul drivers where the purpose of the meeting was to train employees as to certain rules that Plaintiff allegedly violated.

12

78.     This meeting proves that Plaintiff (and his fellow short haul drivers were never properly trained to fully understand certain long-haul specific rules and procedures – where Defendant took action against Plaintiff for allegedly violating the rules and procedures that were the topic of the meeting.

79.     Additionally, Plaintiff was denied an anniversary raise, where Defendant ODFL (by and through ODFL's Camile Araiza) stated that Defendant was denied his annual raise because he had received rule violation within 90 days of his work anniversary.

80.     When he asked to see what policy documents stated that employees will be denied a raise if they have a rule violation 90 days of their work anniversary, Ms. Araiza told Plaintiff to ask corporate for a copy of the written policy.

81.     Plaintiff asked to see the alleged written policy because he observed no such policy in any of the handbooks that he reviewed.

82.     Thereafter, Jody Kahn Mason, outside counsel for Defendant, indicated that no written policy existed.

83.     As Defendant ODFL's agent, Attorney Jody Kahn Mason wrote as follows:

> Anniversary raises are not guaranteed to any employee.  Employees like Mr. Kararo who are on final warnings are not eligible for anniversary raises and therefore would not be notified of the same.  There is no formal written policy relating to this issue.

84.     Further, on numerous occasions, Defendant ODFL's internal document management platform (Workday) did not allow Plaintiff to write rebuttals to any of the numerous false or misleading write ups that he received.

85.     In addition to the above falsified claims, Defendants ODFL and Cox retaliated against Plaintiff for reporting workplace safety violations involving Plaintiff's managers, supervisors, and fellow employees, where one or more of Plaintiff's reports highlighted potential OSHA violations.

86.     Rather than taking actions to investigate or reprimand Plaintiff's managers, supervisors, and fellow employees for committing safety violations, Defendants ODFL and Ms. Cox took the above actions against Plaintiff in an effort to document false grounds to support his termination – where ODFL was extremely upset that Plaintiff has brought a BIPA based Class Action Lawsuit against ODFL in addition to filing to claims for worker's compensation benefits.

### E. ODFL's Executive Leadership Knew of and Approved ODFL's Conduct

87.     Freeman knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

88.     Freeman knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

89.     Plemmons knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

90.     Plemmons knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

91.     Brooks knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

92.     Brooks knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

93. Kelley knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

94. Kelley knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

95. Parr knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

96. Parr knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

97. Murphy knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

98. Murphy knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

99. Cox knew that it would take time for ODFL's managerial and supervisory employees to create a record that ODFL could use to justify Plaintiff's termination.

100. Cox knew that it would take time for ODFL's managerial and supervisory employees to create a record that she could use to support Plaintiff's termination.

101. Cox knew that it was in ODFL's best interest to not terminate Plaintiff immediately after he filed the BIPA class action and his first claim for worker's compensation benefits.

102. In April of 2023, Freeman learned that Plaintiff had filed a BIPA class action against ODFL.

103.   April of 2023, Freeman also learned Plaintiff filed a claim for worker's compensation benefits shortly after he filed the BIPA class action.

104.   In April of 2023, Brooks learned that Plaintiff had filed a BIPA class action against ODFL.

105.   April of 2023, Brooks also learned Plaintiff filed a claim for worker's compensation benefits shortly after he filed the BIPA class action.

106.   In April of 2023, Kelley learned that Plaintiff had filed a BIPA class action against ODFL.

107.   April of 2023, Kelley also learned Plaintiff filed a claim for worker's compensation benefits shortly after he filed the BIPA class action.

108.   In April of 2023, Parr learned that Plaintiff had filed a BIPA class action against ODFL.

109.   April of 2023, Parr also learned Plaintiff filed a claim for worker's compensation benefits shortly after he filed the BIPA class action.

110.   Defendant Cox informed Plaintiff in writing on January 24, 2024, that he was being terminated.

111.   Before Defendant Cox informed Plaintiff that he was being terminated, Freeman knew that Plaintiff was going to be terminated.

112.   Before Defendant Cox informed Plaintiff that he was being terminated, Freeman approved Plaintiff's termination.

113.   Alternatively, Freeman instructed Defendant Cox to terminate Plaintiff sometime in January of 2024.

114.   Before Defendant Cox informed Plaintiff that he was being terminated, Plemmons knew that Plaintiff was going to be terminated.

115.    Before Defendant Cox informed Plaintiff that he was being terminated, Plemmons approved Plaintiff's termination.

116.    Alternatively, Plemmons instructed Defendant Cox to terminate Plaintiff sometime in January of 2024.

117.    Before Defendant Cox informed Plaintiff that he was being terminated, Brooks knew that Plaintiff was going to be terminated.

118.    Before Defendant Cox informed Plaintiff that he was being terminated, Brooks approved Plaintiff's termination.

119.    Alternatively, Brooks instructed Defendant Cox to terminate Plaintiff sometime in January of 2024.

120.    Before Defendant Cox informed Plaintiff that he was being terminated, Kelley knew that Plaintiff was going to be terminated.

121.    Before Defendant Cox informed Plaintiff that he was being terminated, Kelley approved Plaintiff's termination.

122.    Alternatively, Kelley instructed Defendant Cox to terminate Plaintiff sometime in January of 2024.

123.    Before Defendant Cox informed Plaintiff that he was being terminated, Parr knew that Plaintiff was going to be terminated.

124.    Before Defendant Cox informed Plaintiff that he was being terminated, Parr approved Plaintiff's termination.

125.    Alternatively, Parr instructed Defendant Cox to terminate Plaintiff sometime in January of 2024.

126.    Before Defendant Cox informed Plaintiff that he was being terminated, Murphy knew that Plaintiff was going to be terminated.

127. Before Defendant Cox informed Plaintiff that he was being terminated, Murphy approved Plaintiff's termination.

128. Alternatively, Murphy instructed Defendant Cox to terminate Plaintiff sometime in January of 2024.

### F. Additional Post Termination Retaliation and Conduct

129. As a further action of retaliation, when Plaintiff was terminated, Attorney Jody Mason Kahn demanded that Plaintiff return his work-uniforms and boots, even thought other employees who were terminated where not required to return their boots and shirts.

130. Despite asking Attorney Jody Mason Kahn to produce an off-boarding/termination check list which states (in writing) that terminated employees are required to return their boots and shirt, not written check list was ever produced.

131. Upon information and belief, Defendant ODFL does not maintain and off-boarding/termination check list.

132. Upon information and belief, Defendant ODFL does not require employees to return work boots and work shirts if they are terminated.

133. Further, upon information and belief, with regard to Plaintiff, Defendant ODFL has not fully complied with its Employee Handbook, which states that it will destroy biometric data associated with an employee "only until the initial purpose for collecting or obtaining such information has been satisfied" and ODFL "will destroy an employee's Biometric Data, including any information stored on the time management systems (if any), as soon as practicable following the termination of an employee's employment with the Company."

134. ODFL's complete current retention and destruction policy is depicted below:

The Company will retain Biometric Data only until the initial purpose for collecting or obtaining such information has been satisfied. In general, and except as otherwise required by law, legal process, or relevant Company policies, the Company will destroy an employee's Biometric Data, including any information stored on the time management systems (if any), as soon as practicable following the termination of an employee's employment with the Company. The Company will make reasonable and technically feasible efforts to ensure that Biometric Data is not retained for longer than one year following an employee's last interaction with the Company.

### III.  Causes of Action

### COUNT I - COMMON LAW RETALIATORY DISCHARGE

135.  Paragraphs 1 through 134 are incorporated by reference.

136.  Plaintiff brings Count I against Defendants ODFL and Dee Dee Cox for common law retaliatory discharge – for discharging him in retaliation for refusing to participate in activity that the employee believes to be a violation of public policy – where ultimately, he sued ODFL for violating provisions of BIPA.

137.  "Actions that are protected by the public policy of Illinois" include "retaliation for complaints about an employer's unlawful conduct." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940-41 (7th Cir. 2002).  For example, an employee may state a claim for common law retaliation if he/she/they are mistreated and/or fired after reporting violations of Illinois law.

138.  Plaintiff was subject to retaliation after he refused to accept Defendant ODFL's unlawful attempts to belatedly purchase consent to utilize a biometric timeclock when ODFL and its managerial employees repeatedly attempted to persuade Plaintiff to sign a Consent Form to absolve ODFL from all liability for its violations of BIPA.

139.  In attempting to persuade Plaintiff to sign away his rights under BIPA, ODFL's managerial employees repeatedly attempt to pay Plaintiff $500 (pre-tax) in

exchange for him signing a Consent Form that absolved Defendant of all liability for its violations of BIPA.

140.    When Plaintiff learned that Defendant has violated his rights under BIPA by neglecting to obtain his express written consent before ODFL began collecting his biometric-base fingerprint, he filed a Class Action Lawsuit against ODFL.

141.    In filing suit against ODFL, Plaintiff side-tracked ODFL's attempts to mitigate its liability to Plaintiff, current employees of ODFL, as well as former employees of ODFL.

142.    By filing suit against ODFL, Plaintiff upset ODFL's efforts to avoid liability for its violations of BIPA and caused ODFL to engage outside counsel to defend ODFL.

143.    As a result of Plaintiff refusing to participate in ODFL's violations of BIPA (which ultimately led to Plaintiff suing ODFL), Defendants ODFL and Cox terminated Plaintiff in violation of public policy.

144.    Upon information and belief, certain executives and currently unknown individuals may have instructed Defendant Cox to terminate Plaintiff. These individuals will be named after discovery takes place.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against Defendants ODFL and Cox, and awarding him:

    A.  Damages for lost back and front pay;

    B.  Damages for harm to his reputation;

    C.  Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

    D.  Punitive damages (to the extent available by law); and

    E.  Attorney's fees and allowable costs.

## COUNT II - RETALIATION IN VIOLATION OF SECTION 10 OF THE IWBA

145.    Paragraphs 1 through 134 are incorporated by reference.

146.    Plaintiff brings Count II against Defendants ODFL and Dee Dee Cox for retaliating against him in violation of Section 10 of Illinois Whistleblower Act. 740 ILCS 174/1, *et seq.* ("IWBA").

147.    Section 10 of the IWBA prohibits an employer to "make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10.

148.    ODFL was Plaintiff's "employer," and Plaintiff was ODFL "employee," as those terms are defined Section 5 of the IWBA.

149.    Defendant Cox as also Plaintiff's "employer" where Section 5 of the IWBA defines an "employer" to include "any person acting withing the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5.

150.    On more than one occasion, Plaintiff informed ODFL that it was violating state and federal laws, rules and regulations related to workplace safety.

151.    For example, Plaintiff informed his managers and supervisors that Defendant ODFL and Plaintiff's managers and supervisors were refusing to enforce workplace rules and regulations governing protective gear for employees.

152.    Additionally, Defendants ODFL and Cox retaliated against Plaintiff after he reported workplace safety violations involving Plaintiff's managers, supervisors, and fellow employees, where Plaintiff's reports highlighted potential OSHA violations.

153. As described above, Defendants ODFL and Cox, in conjunction with Plaintiff's supervisors and managers, subjected Plaintiff retaliatory treatment after Plaintiff informed his managers and supervisors that they (along with ODFL) were violating state and federal laws, rules and regulations related to workplace safety.

154. Further, Defendants ODFL and Cox, in conjunction with Plaintiff's supervisors and managers, subjected Plaintiff to a higher level of scrutiny after Plaintiff informed his managers and supervisors that they (along with ODFL) were violating state and federal laws, rules and regulations related to workplace safety.

155. Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to the above-described retaliatory treatment after Plaintiff informed his managers and supervisors that they (along with ODFL) were violating state and federal laws, rules and regulations related to workplace safety.

156. In acting in this manner, Defendants ODFL and Cox violated Section 10 of the IWBA.

157. Upon information and belief, certain executives of ODFL and other known employees may have violated Section 10 of the IWBA. These individuals will be named after discovery takes place.

158. Plaintiff suffered damages as a result of Defendants' unlawful conduct.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendants ODFL and Cox, and award him:

    A. Damages for lost back and front pay;

    B. Damages for harm to his reputation;

    C. Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

    D. Punitive damages (to the extent available by law); and

    E. Attorney's fees and allowable costs.

## COUNT III - RETALIATION IN VIOLATION OF SECTION 20 OF THE IWBA

159.    Paragraphs 1 through 134 are incorporated by reference.

160.    Plaintiff brings Count III against Defendants ODFL and Dee Dee Cox for retaliating against him in violation of Section 20 of Illinois Whistleblower Act. 740 ILCS 174/1, *et seq.* ("IWBA").

161.    Section 20 of the Whistleblower Act also prohibits an employer from retaliating against an employee who refuses to participate in an activity that would result in a violation of state law. 740 ILCS 174/20.

162.    ODFL was Plaintiff's "employer," and Plaintiff was ODFL "employee," as those terms are defined Section 5 of the IWBA.

163.    Defendant Cox as also Plaintiff's "employer" where Section 5 of the IWBA defines an "employer" to include "any person acting withing the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5.

164.    As described above, Defendants ODFL and Cox, in conjunction with Plaintiff's supervisors and managers, subjected Plaintiff to a higher level of scrutiny because Plaintiff had refused to participate in Defendant's violations of BIPA.

165.    Further, Defendants ODFL and Cox, in conjunction with Plaintiff's supervisors and managers, subjected Plaintiff to a higher level of scrutiny because Plaintiff had filed a BIPA class action against Defendant.

166.    As described above, Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to the above-described retaliatory treatment because Plaintiff refused to participate in ODFL's violations of BIPA.

167.    Further, as described above, Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to the above-described

retaliatory treatment because Plaintiff had filed Class Action Lawsuit against ODFL to remedy its violations of BIPA.

168. In doing so, Defendants ODFL and Cox violated Section 20 of the IWBA.

169. Upon information and belief, certain executives of ODFL and other known employee may have violated Section 20 of the IWBA. These individuals will be named after discovery takes place.

170. Plaintiff suffered damages as a result of Defendants' unlawful conduct.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendants ODFL and Cox, and award him:

    A. Damages for lost back and front pay;

    B. Damages for harm to his reputation;

    C. Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

    D. Punitive damages (to the extent available by law); and

    E. Attorney's fees and allowable costs.


**COUNT IV - TERMINATION IN VIOLATION OF SECTION 20 OF THE ILLINOIS WHISTLEBLOWER ACT**

171. Paragraphs 1 through 134 are incorporated by reference.

172. Plaintiff brings Count IV against Defendants ODFL and Dee Dee Cox for terminating Plaintiff in violation of Section 20 of the Illinois Whistleblower Act.

173. Section 20 of the Whistleblower Act also prohibits an employer from terminating an employee who refuses to participate in an activity that would result in a violation of state law. 740 ILCS 174/20.

174. ODFL was Plaintiff's "employer," and Plaintiff was ODFL "employee," as those terms are defined Section 5 of the IWBA.

24

175. Defendant Cox as also Plaintiff's "employer" where Section 5 of the IWBA defines an "employer" to include "any person acting withing the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5.

176. As described above, Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to a higher level of scrutiny because Plaintiff had refused to participate in Defendant's violations of BIPA.

177. Further, Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to a higher level of scrutiny because Plaintiff had filed a BIPA class action against Defendant.

178. As described above, Defendants ODFL and Cox terminated Plaintiff because he refused to participate in ODFL's violations of BIPA.

179. Further, as described above, Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to the above-described retaliatory treatment because Plaintiff had filed Class Action Lawsuit against ODFL to remedy its violations of BIPA.

180. In doing so, Defendants ODFL and Cox violated Section 20 of the IWBA.

181. Upon information and belief, certain executives of ODFL and other known employee may have violated Section 20 of the IWBA. These individuals will be named after discovery takes place.

182. Plaintiff suffered damages as a result of Defendants' unlawful conduct.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendants ODFL and Cox, and award him:

    A. Damages for lost back and front pay;

    B. Damages for harm to his reputation;

C. Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

D. Punitive damages (to the extent available by law); and

E. Attorney's fees and allowable costs.

## COUNT V - VIOLATION OF SECTION 20.1 OF THE WHISTLEBLOWER ACT

183. Paragraphs 1 through 134 are incorporated by reference.

184. Plaintiff brings Count V against Defendants ODFL and Cox for violations of Section 20.1 Illinois Whistleblower Act. 740 ILCS 174/1, *et seq.*

185. Defendant ODFL was Plaintiff's "employer," and Plaintiff was Defendant ODFL 's "employee," as those terms are defined in the Act. 740 ILCS 174/5.

186. Defendant Cox as also Plaintiff's "employer" where Section 5 of the IWBA defines an "employer" to include "any person acting withing the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5.

187. As described above, Defendants ODFL and Cox, along with Plaintiff's supervisors and managers, subjected Plaintiff to a higher level of scrutiny because Plaintiff filed a BIPA class action against Defendant.

188. Section 20.1 of the Whistleblower Act provides that "[a]ny other act or omission *not* otherwise specifically set forth in this Act, ... also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing."

189. As described above, in violation of Section 20.1 of the Whistleblower Act, Defendant unlawfully retaliated against Plaintiff in retaliation for Plaintiff attempting to disclose public wrongdoing in relation to Defendant's violations of BIPA and Defendant's

efforts to mitigate liability for its violations of BIPA by attempting to belatedly buy off consent from Plaintiff and other employees for $500 payments (pre-tax).

190. Section 20.2 of the Whistleblower Act provides that an employer may not threaten any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act."

191. Defendants ODFL and Cox, in conjunction with Plaintiff's supervisors and managers, unlawfully retaliated against Plaintiff in violation of Sections 20.1 and 20.2 of the Whistleblower Act.

192. Further, Defendants ODFL and Cox unlawfully discharged Plaintiff in retaliation for his actions in seeking to represent other employees in a class action lawsuit asserting violations of BIPA.

193. Plaintiff reasonably believed that ODFL was acting in violation of BIPA and in violation of public policy.

194. As set forth above, Defendants ODFL and Cox violated the Whistleblower Act by retaliating against Plaintiff and by firing Plaintiff.

195. An employee may bring a civil action against an employer who violates the Whistleblower Act. 740 ILCS 174/30.

196. Upon information and belief, other executives and currently unknown individuals employed by ODFL appear to have violated Section 20.1 of the IWBA. These individuals will be named after discovery takes place.

197. As the direct result of Defendants' violation of the Whistleblower Act, Plaintiff has suffered loss of income, benefits, and career opportunities, as well as humiliation and damages for harm to his reputation. The conduct alleged herein was willful and wanton.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendants ODFL and Cox, and award him:

    A. Damages for lost back and front pay;

    B. Damages for harm to his reputation;

    C. Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

    D. Punitive damages (to the extent available by law); and

    E. Attorney's fees and allowable costs.

## COUNT VI - RETALIATION IN VIOLATION OF THE ILLINOIS WORKER'S COMPENSATION ACT

198. Paragraphs 1 through 134 are incorporated by reference.

199. Plaintiff brings Count VI against Defendant ODFL for violating his rights set forth by the Illinois Woker's Compensation Act ("IWCA"), which was enacted to provide compensation to injured employees. *See*, 820 ILCS 305/1.

200. It is a violation of Illinois public policy for an employer to retaliate against an employee for filing a claim pursuant to the IWCA. *See*, 820 ILCS 305/4(h).

201. Section 305/4(h) of the IWCA prohibits an employer from retaliating against an employee as a result of the employee filing a worker's compensation claim.

202. In relevant part, Section 305/4(h) of the IWCA provides that:

> It shall be unlawful for any employer … to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

*See* 820 ILCS 305/4(h).

203. To establish violation of Section 305/4(h), an employee must allege that he/she/they exercised a right granted by the Workers' Compensation Act; and that

28

he/she/they was/were discharged and that the discharge was causally related to the filing a claim under the Workers' Compensation Act. *See Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 704 N.E.2d 403, 406, 235 Ill. Dec. 54 (Ill. 1998); *Phillips v. Continental Tire The Americas, LLC*, 743 F.3d 475, 477 (7th Cir. 2014).[1]

204.    As a result of Plaintiff filing a worker's compensation claim, Defendant interfered with Plaintiff's job in violation of Section 305/4(h) of the IWCA.

205.    As a result of Plaintiff filing a worker's compensation claim, engaged in the above described retaliatory conduct.

206.    As a result of Defendant's retaliatory conduct, Plaintiff's suffered economic and non-economic harm.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendant, and awarding him:

A.    Damages for lost back and front pay;

B.    Damages for harm to his reputation;

C.    Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

D.    Punitive damages (to the extent available by law); and

E.    Attorney's fees and allowable costs.

## COUNT VII - TERMINATION IN VIOLATION OF THE IWCA

207.    Paragraphs 1 through 134 are incorporated by reference.

208.    Plaintiff brings Count VI against Defendant ODFL for violating his rights set forth by the Illinois Woker's Compensation Act ("IWCA"), which was enacted to provide compensation to injured employees. *See*, 820 ILCS 305/1.

---

[1] The same three (3) step analysis applies to a claim that an employer refused to rehire or recall an employee to active service as a result of the employee's filing a claim pursuant to the IWCA.

209.    As set forth above, Plaintiff exercised his rights pursuant to the Illinois Woker's Compensation Act ("IWCA"), which was enacted to provide compensation to injured employees. *See*, 820 ILCS 305/1.

210.    It is a violation of Illinois public policy for an employer to TERMINATE an employee for filing a claim pursuant to the IWCA. *See*, 820 ILCS 305/4(h).

211.    Section 305/4(h) of the IWCA prohibits an employer from terminating an employee as a result of the employee filing a worker's compensation claim.

212.    In relevant part, Section 305/4(h) of the IWCA provides that:

> It shall be unlawful for any employer … to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

*See* 820 ILCS 305/4(h).

213.    To establish violation of Section 305/4(h), an employee must allege that he/she/they exercised a right granted by the Workers' Compensation Act; and that he/she/they was/were discharged and that the discharge was causally related to the filing a claim under the Workers' Compensation Act. *See Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 704 N.E.2d 403, 406, 235 Ill. Dec. 54 (Ill. 1998); *Phillips v. Continental Tire The Americas, LLC*, 743 F.3d 475, 477 (7th Cir. 2014).

214.    As a result of Plaintiff filing a worker's compensation claim, Defendant interfered with Plaintiff's job in violation of Section 305/4(h) of the IWCA.

215.    As a result of Plaintiff filing a worker's compensation claim, engaged in the above described retaliatory conduct.

216.    As a result of Defendant's retaliatory conduct, Plaintiff's suffered economic and non-economic harm.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendant, and awarding him:

    A.  Damages for lost back and front pay;

    B.  Damages for harm to his reputation;

    C.  Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

    D.  Punitive damages (to the extent available by law); and

    E.  Attorney's fees and allowable costs.

## <u>COUNT VIII - DEFAMATION</u>

217.    Paragraphs 1 through 134 are incorporated by reference.

218.    Plaintiff brings Count VIII against Defendant Cox as a result of her defamatory words which falsely accusing him of workplace misconduct.

219.    Defendant Cox's words wrongfully and inaccurately accused Plaintiff of workplace misconduct.

220.    Defendant Cox's words caused Plaintiff to suffer reputational harm relative to her claiming that he violated workplace rules and that Plaintiff lacked the ability to perform in his chosen profession.

221.    As a result of Defendant' Cox's words, Plaintiff has been black-balled in the tractor-trailer transportation industry.

222.    Upon information and belief, currently unknown former managers and supervisors of Plaintiff have defamed him to other managers and supervisors who work in the tractor-trailer transportation industry.

223.    Upon information and belief, currently unknown executives of ODFL have defamed or identified Plaintiff to other executives who work in the tractor-trailer transportation industry for the purpose of black-balling Plaintiff.

Wherefore, the Plaintiff respectfully requests that this Honorable Court grant him judgment against the Defendants ODFL and Cox, and award him:

    A.  Damages for lost back and front pay;

    B.  Damages for harm to his reputation;

    C.  Compensatory damages for emotional distress and anxiety caused by Defendant's unlawful conduct Punitive damages;

    D.  Punitive damages (to the extent available by law); and

    E.  Attorney's fees and allowable costs

## **Jury Demand**

Plaintiff demands a jury trial.

/s/ James C. Vlahakis

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
312-766-0511 (office)
312-648-6127 (direct)
jamesv@vlahakislaw.com

*Counsel for Plaintiff*

32